[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 7, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-11336
Non-Argument Calendar

_____

D. C. Docket No. 04-20710-CR-JEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MAGNOLIA PAZ BARONA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(October 7, 2005)**

Before TJOFLAT, DUBINA and FAY, Circuit Judges.

PER CURIAM:

Magnolia Paz Barona directly appeals her 36-month sentence for importing a mixture and substance containing a detectable amount of heroin, in violation of 21 U.S.C. § 925(a). Paz Barona argues on appeal that the district court erred in refusing to grant her a two-level minor-role adjustment in her base offense level, pursuant to U.S.S.G. § 3B1.2(b). For the reasons set forth more fully below, we affirm Paz Barona's sentence.

According to Paz Barona's presentence investigation report ("PSI"), when she and her sister arrived at the Miami International Airport in Miami, Florida, they both were selected for secondary examination by inspectors with the U.S. Customs and Border Protections. Paz Barona initially stated that she went to Colombia to visit her ill mother, and that she was traveling with her sister. Paz Barona also consented to have her luggage examined. Although the inspectors did not recover narcotics during this search, or during a consensual search of Paz Barona's person, they still suspected her of being a drug courier and gained her consent to conduct an x-ray examination of her person. After this examination revealed foreign bodies in Paz Barona's rectum, the officials arrested Paz Barona and transported her to a hospital. Paz Barona subsequently expelled three large latex-covered pellets, which contained heroin.

The PSI further included that Paz Barona's sister similarly was taken to a

hospital, where she expelled nine heroin pellets.[1] When law enforcement officials again attempted to question Paz Barona and her sister, they both declined to make a statement. Prior to sentencing, however, Paz Barona submitted to the court the following "acceptance of responsibility" statement:

> I went to Cali to visit my family there. While I was waiting at the dentist's office one day, I met three people, two men and a woman, who offered to pay me $1,500 to bring something back with me to New York. Although they did not specifically say that it was drugs, I assumed it was drugs because of the circumstances. A few days later, they gave me a plastic bag with the pellets in it. They told me that someone would meet me at the airport in New York, take me somewhere to expel the pellets and pay me. This person would know me by what I was wearing.

In assessing Paz Barona's role in the offense, the probation officer found that Paz Barona and her sister, as heroin carriers, (1) both were responsible for the total amount of 362.20 grams of heroin, and (2) did not play either a mitigating or aggravating role in the offense.

Paz Barona filed objections to the PSI, arguing, among other things, that the probation officer should have recommended a § 3B1.2(b) minor-role adjustment. In support, Paz Barona asserted that she (1) was recruited to act exclusively as a drug courier; (2) was paid a relatively small amount of money, $1,500; (3) had

_____

[1] A subsequent laboratory analysis revealed that the three pellets Paz Barona expelled contained 90.7 grams net weight of heroin, and that the nine pellets her sister expelled contained 271.5 grams net weight of heroin.

3

limited knowledge of the drug conspiracy, as she only met the two men and one woman who gave her the sealed pellets; (4) had no proprietary interest in the drugs; (5) had no knowledge of the people who were to distribute the drugs, or of how this distribution was to occur; (6) had no role in planning the offense; (7) had no decision-making authority; and (8) had not participated in any other drug transactions with the persons who have recruited her a courier. Paz Barona contended that, after considering the nature and degree of her contact with other participants and her relative share of the drug proceeds, the court should conclude that she "performed a limited function" in the offense.

On February 24, 2005, at sentencing, Paz Barona renewed her objection to the PSI's failure to recommend a § 3B1.2(b) adjustment. As part of this objection, Paz Barona contended that the district court could consider the fact that she only was being held accountable for the amount of drugs that she personally transported, but that this fact was not determinative. The court, in turn, discussed that it was inclined either to hold Paz Barona accountable only for the drugs that she personally transported into the United States, or to grant her a minor-role adjustment, but that it did not intend to take both of these actions.

The court, however, clarified that it understood that it had the discretion to grant Paz Barona a minor-role adjustment, even if it held her accountable for only

90.7 grams of heroin—the amount of heroin that she personally transported. In doing so, the court explained:

> I am not inclined to grant the minor role, although I want it clear on the record that I understand that I could do that, that it would be within my discretion to do so. I choose not to do so because I believe that in the context of the lesser amount and what she did, she's not entitled to a minor role.
>
> Her sister did not get a minor role, either. Her sister did not get an enhancement, either, as a result of this. I think that they both were what they were, just participants. And I don't think either of them is entitled to an enhancement or a minor role.

The court ultimately determined that Paz Barona was responsible for less than 100 grams of heroin, denied her request for a minor-role adjustment, and sentenced her to 36 months' imprisonment and 3 years' supervised release.

On appeal, Paz Barona argues that the district court erred in denying her a minor-role adjustment because it unduly relied on the fact that she was being held accountable at sentencing only for her own conduct. Paz Barona contends that, pursuant to a 2001 Amendment to § 3B1.2, the court was not precluded from granting a role adjustment, even though she only was held accountable for the quantity of drugs for which she was involved personally. Paz Barona also argues that the court erred in failing to consider all of the facts and circumstances

surrounding her involvement in the offense of conviction.[2]

Section 3B1.2(b) of the United States Sentencing Guidelines provides for a two-level downward adjustment in a defendant's base offense level if she was a minor participant in the offense. U.S.S.G. § 3B1.2(b). The defendant bears the burden of proving by a preponderance of the evidence that she is entitled to a minor-role adjustment. De Varon, 175 F.3d at 939. A district court's determination of a defendant's role in an offense constitutes a factual finding reviewed for clear error. Id. at 937. Moreover, post-Booker, we continue to review a district court's factual determinations for clear error. See United States v. Crawford, 407 F.3d 1174, 1178-79 (11th Cir. 2005) (explaining that Booker did not alter either our review of the application of the guidelines, or our standards of review).[3] We cannot find clear error unless we are "left with a definite and firm

---

[2] Paz Barona has waived by not arguing on appeal that her sentence was imposed in violation of Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), or United States v. Booker, 543 U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). See United States v. Dockery, 401 F.3d 1261, 1262-63 (11th Cir.) (holding that our "well-established rule that issues and contentions not timely raised in the briefs are deemed abandoned" is applicable to claims based on Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and its progeny), petition for cert. filed, (U.S. Aug. 5, 2005) (No. 05-5714).

[3] We also explained in Crawford that, after a district court has calculated accurately a defendant's guideline range, it "may impose a more severe or more lenient sentence," which this Court reviews only for reasonableness. See Crawford, 407 F.3d at 1179; see also United States v. Winingear, No. 05-11198, manuscript op. at 9-11 (11th Cir. Aug. 30, 2005) (concluding that, contrary to defendant's argument on appeal, his post-Booker sentence was reasonable). However, because Paz Barona has not argued on appeal that her sentence was unreasonable, we also conclude that this issue is abandoned. See Dockery, 401 F.3d at 1261.

conviction that a mistake has been committed." Id. at 1177 (quotation omitted).

A minor participant means any participant "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n.5). The application of this adjustment depends heavily on the facts in each case. Id., comment. (n.3©)). In determining whether a defendant played a minor role in the offense for which she has been held accountable, the district court "must measure the defendant's role against the relevant conduct attributed to her in calculating her base offense level." De Varon, 175 F.3d at 943-44. "[W]here the relevant conduct attributed to a defendant is identical to her actual conduct, she cannot prove that she is entitled to a minor[-]role adjustment simply by pointing to some broader criminal scheme in which she was a minor participant but for which she was not held accountable." Id. at 941.

Although in many cases this first method of analysis will be dispositive, the district court may also measure the defendant's culpability in comparison to that of other participants in the relevant conduct. Id. at 944. In drug-courier cases, relevant considerations may include, among other factors: (1) the amount of drugs; (2) the fair market value of the drugs; (3) the amount of money to be paid to the courier; (4) the equity interest in the drugs; (5) the defendant's role in planning the criminal scheme; and (6) the defendant's role in distribution. Id. at 945.

Regardless, it is "entirely possible for conspiracies to exist in which there are no minor participants." United States v. Zaccardi, 924 F.2d 201, 203 (11th Cir. 1991).

In De Varon, the defendant, a drug courier, alleged that another person recruited her, made the arrangements for the trip, and told her that an unidentified individual would receive the drugs in Miami. De Varon, 175 F.3d at 934-35, 946. Regardless, we concluded that the district court did not clearly err when it determined that the defendant, who had smuggled 512.4 grams of heroin inside her body into the United States, had not played a minor role in her relevant conduct of importing the heroin. Id. at 934, 947.

Similar to the defendant in De Varon, Paz Barona has failed to establish that the district court clearly erred in refusing to grant her a minor-role adjustment. Paz Barona's act of importing 90.7 grams of heroin constituted the relevant conduct that was attributed to her. Under the second part of the De Varon analysis, Paz Barona also failed to show that she was substantially less culpable than other participants in the conspiracy. As discussed above, Paz Barona asserted in support of her minor-role objection that she (1) was recruited to act exclusively as a drug courier; (2) was paid a relatively small amount of money; (3) had limited knowledge of the drug conspiracy; (4) had no proprietary interest in the drugs; (5) had no knowledge of the people who were to distribute the drugs, or of how

8

this distribution was to occur; (6) had no role in planning the offense; (7) had no decision-making authority; and (8) had not participated in other drug transactions with the persons who have recruited her a courier. Paz Barona's "acceptance of responsibility statement also reflected that she was recruited by persons she did not know, and that she did not know the person to whom she was to deliver the heroin.

Paz Barona, however, was personally responsible for importing a substantial amount of heroin, with the intent to deliver the heroin and collect $1,500 in exchange. See De Varon, 175 F.3d at 941. Outside of the fact that her sister—the only other identifiable member of the drug operation—delivered a greater quantity of heroin, Paz Barona also failed to show that her sister, in importing heroin into the United States at the same time, played a greater role in the operation. Indeed, in denying Paz Barona a minor-role adjustment, the court noted that it similarly had not granted an adjustment to Paz Barona's sister. Thus, the court did not clearly err in concluding that there were no minor participants. See id. at 939.

To the extent Paz Barona also is contending that the court misapplied the sentencing guidelines by relying exclusively on the fact that she was held accountable for only the 90.7 grams of heroin that she personally imported into the country, this argument similarly is without merit. Amendment 635 of the Sentencing Guidelines, which revised the commentary to § 3B1.2, states that a

defendant "who is accountable under § 1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in concerted criminal activity is not precluded from consideration for an adjustment under this guideline." See U.S.S.G. § 3B1.2, comment. (n.3(A)). However, we have determined that the Sentencing Commission, in passing Amendment 635, merely ratified our conclusion in De Varon that a defendant's role as a drug courier creates no presumption as to whether or not his role was minor. See United States v. Boyd, 291 F.3d 1274, 1277 (11th Cir. 2002).

Moreover, in stating that it understood that it had the discretion to grant a minor-role adjustment, and that it "cho[se] not to do so because [it] believe[d] that in the context of the lesser amount and what [Paz Barona] did, she [was] not entitled to a minor role," the court demonstrated that it understood that it was not foreclosed from granting the adjustment. These statements also show that the court considered factors in addition to drug amount, and that it found that this adjustment unwarranted based on the particular circumstances in the case.

Accordingly, we conclude that the district court's decision not to grant Paz Barona a § 3B1.2(b) minor-role adjustment was not clearly erroneous. We, therefore, affirm.

**AFFIRMED.**

10